# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ERIN BARTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:25-cv-00774** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **VANDERBILT UNIVERSITY,** | ) | **MAGISTRATE JUDGE FRENSLEY** |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Vanderbilt University's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(5) and 12(b)(6). (Doc. No. 27). Plaintiff Erin Barton filed a response (Doc. No. 32), and Defendant filed a reply (Doc. No. 35).

For the reasons stated herein, the motion to dismiss is **DENIED**.

## I.    BACKGROUND[1]

Dr. Erin Barton was a tenured Associate Professor of Special Education at Vanderbilt University. (¶ 8). She came out publicly as gay in late 2021. (¶ 8). In March 2022, Plaintiff held a retreat for graduate students in her research lab. (¶ 10). Participation in the retreat was voluntary. (¶ 12). Plaintiff's partner, who has training in conducting retreats, led certain activities on the retreat. (¶ 13). Nothing at the retreat was of a sexual nature. (¶ 17).

Following the retreat, Vanderbilt Dean Sharon Shields emailed Dean Camilla Benbow with concerns about the retreat after she saw photos on social media in which one student was wearing a shirt that said, "Inclusion is our love language" and one woman was kneeling. (¶¶ 14-16). Dean

---

[1]    The facts in this section are as alleged in the Amended Complaint (Doc. No. 21).

Shields accused the retreat as promoting "sexualized messaging" and "grooming individuals." (*Id.*).

Dean Benbow then notified Plaintiff that she was considering disciplinary action against Plaintiff for potential "gross personal misconduct rendering [her] unfit for association with students or colleagues." (¶ 18). A faculty investigative committee was appointed to investigate whether Plaintiff engaged in misconduct. (¶ 20). The investigation included a number of references to Plaintiff's same-sex partner and allegations of "grooming" and other sexually inappropriate behavior. (¶¶ 21-22). Similarly-situated straight and male faculty members have held retreats or similar outside events without the scrutiny applied to Plaintiff. (¶ 23).

Following the investigation, Dean Benbow informed Plaintiff that she had decided to terminate Plaintiff's employment. (¶ 24). Plaintiff was terminated effective January 27, 2024. (¶ 25).

Plaintiff brings claims against Vanderbilt University alleging discrimination on the basis of sex and sexual orientation in violation of Title VII, 42 U.S.C. § 2000e, *et seq*., and the Tennessee Human Rights Act ("THRA"). Vanderbilt moves to dismiss under Federal Rules of Civil Procedure 12(b)(5) for failure to timely effect services of process, and 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    SERVICE OF PROCESS

Vanderbilt argues the case should be dismissed because Plaintiff failed to serve the Complaint within the time required by Federal Rule of Civil Procedure 4(m) or provide good cause for her failure to do so. (Doc. No. 28 at 1). The case was filed on July 11, 2025. (Doc. No. 1). The Court extended the deadline to effect service by 30 days to November 9, 2025 (Doc. No. 12), but Plaintiff did not serve Vanderbilt until December 2, 2025 (*see* Doc. No. 23).

2

Federal Rule of Civil Procedure 4(m) provides that the court must extend the time for services for an appropriate period if the plaintiff shows good cause for a failure of service. Fed. R. Civ. P. 4(m). Absent a finding of good cause, the court retains discretion as to whether or not to enlarge the timeframe. *See United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568 (6th Cir. 2022) (citing *Henderson v. United States*, 517 U.S. 654, 662 (1996)). In deciding whether to grant a discretionary extension of time in the absence of a finding of good cause, the Sixth Circuit has instructed district courts to consider the following factors:

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;
>
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
>
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and
>
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*Id*. at 569.

Defendant argues these factors support denying a retroactive extension request and instead dismissing the case. The Court disagrees. The total delay of approximately two months is not extraordinarily long; if the case is dismissed, the statute of limitations will have run on Plaintiff's claims; Vanderbilt had notice of the lawsuit within the original time for service and consented to an extension of 30 days; and the assertion of potential prejudice from an additional one-month delay is not compelling. Overall, consideration of these factors weighs in favor of extending the

time for service and denying Defendant's motion to dismiss under Rule 12(b)(5). Accordingly, the motion to dismiss under Fed. R. Civ. P. 12(b)(5) is DENIED.

### III.    !FAILURE TO STATE A CLAIM

**A.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

4

**B.      Discrimination**

Title VII prohibits discrimination in employment on the basis of an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. To state a Title VII discrimination claim, a plaintiff must plead facts that allow the court to infer an adverse employment action was based on discriminatory animus. Defendant argues Plaintiff "fails to provide any factual allegations" to support her claim that she was subject to discrimination on the basis of her sex and sexual orientation and that the Amended Complaint instead "tells a story of Vanderbilt taking seriously concerns of 'sexualized messaging' and 'grooming.'" (Doc. No. 28 at 11). Defendant argues it would be "illogical" and "not reasonable at all" to conclude that the decision to open an investigation was because of Plaintiff's sex and/or sexual orientation. (*Id*. at 11). Defendant also argues that the Amended Complaint does not provide sufficient information about comparators to raise an inference of discrimination. (*Id*. at 12-13).

In response, Plaintiff argues that the allegations are sufficient to raise an inference of discrimination. The Court agrees. First, detailed allegations about comparators are not required at this stage. *See Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 WL 272988, at *5 (6th Cir. Sept. 24, 2025) ("Although some of our cases noted comparator names or job roles to illustrate sufficiency at the pleading stage, we have never required plaintiffs to include such detail."). Second, Defendant's arguments about the reasonableness of an inference of discrimination are premised on a reading of the Amended Complaint in the light most favorable to Defendant, which is not the standard on a motion to dismiss. *See Directv, Inc.*, 487 F.3d at 476. Drawing reasonable inferences in favor of the *Plaintiff*, she alleges that nothing sexual happened during the retreat and the photographs on social media would not have reasonaby raised any concerns about sexualized messaging or grooming, yet shortly after Plaintiff came out as gay, she was accused of and

5

investigated for sexually inappropriate behavior, and the investigation specifically referenced Plaintiff's same-sex partner. The Court finds these allegations are sufficient to plausibly allege discriminatory animus.

**C.      THRA**

The THRA prohibits discrimination on the basis of "sex." The stated purpose of the THRA is to "provide for execution within Tennessee of the policies embodied in federal civil rights laws." Tenn. Code Ann. § 4-21-101(a)(1). Tennessee courts regularly look to federal case law for guidance in interpreting claims brought under the THRA. *See Howse v. Topre Am. Corp.*, No. 3:24-cv-00034, 2025 WL 2174857, at *3-4 (M.D. Tenn. Jul. 31, 2025); *Bertrand v. Carlex Glass Am.*, No. 2025 WL 1828676, at *3 (Tenn. Ct. App., Jul. 2, 2025) (citing *Wilson v. Rubin*, 104 S.W.3d 39, 48 (Tenn. Ct. App. 2002)).

Defendant argues that because the THRA defines "sex" as "a person's immutable biological sex as determined by anatomy and genetics existing at the time of birth and evidence of a person's biological sex," it does not prohibit discrimination on the basis of sexual orientation. (Doc. No. 28 at 14 (citing Tenn. Code Ann. §§ 4-21-401, 4-21-102, 1-3-105)). The Court recently considered this argument in *Howse*, 2025 WL 2174857 at *3-4. In that case, the Court declined to dismiss the claim "absent a clear indication that the application of THRA is more limited than that of Title VII." Defendant provides no reason to reach a different result here.

**IV.      CONCLUSION**

For the reasons stated herein, Defendant's Motion to Dismiss (Doc. No. 27) is **DENIED**.

It is so **ORDERED**.

_____

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE